JONATHON M. MARK,

                    Plaintiff,

    v.                                          Case No. 25-cv-211-pp

JAMES BORGEN, *et al.*,

                    Defendants.

## ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 15)

Plaintiff Jonathon Mark, who is incarcerated at Wisconsin Secure Program Facility and is representing himself, filed this case alleging violations of his constitutional rights. The court screened the complaint and determined that it did not state a claim. Dkt. No. 11 at 9. The court gave the plaintiff an opportunity to file an amended complaint; he took that opportunity, and this order screens that amended complaint. Dkt. No. 15.

## I.    Screening the Amended Complaint

### A.    Federal Screening Standard

Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

1

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter C'nty Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. C'nty of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

## B.    Amended Complaint's Allegations

The plaintiff was confined at the Fond du Lac County Jail during the events described in his amended complaint. Dkt. No. 15 at 1. He sues Sheriff Ryan Waldschmidt, Jail Administrator James Borgen, Tyler Broderick and John and Jane Does. Id.

The plaintiff alleges that Waldschmidt created an official policy which provides: "The Jail will no longer accept any books (except religious), publications (except religious), games, or puzzles to be mailed/shipped into the facility[.]" Id. at 2. The plaintiff states that based on this policy, he was not allowed to purchase any non-religious books/publications from outside distributors, which violated his rights under the First Amendment. Id. The plaintiff avers that John or Jane Does who make up the county executive board "might be the final policy-making authority instead of the sheriff." Id. at 3.

The plaintiff alleges that on February 16 and March 13, 2025, he sent letters to Barnes & Noble in Madison, Wisconsin to purchase religious and non-religious books, but he never received a response. Id. at 4. The plaintiff states that after he was released from jail on July 3, 2025, he found out that Barnes & Noble did not receive his letters. Id. at 4-5. He avers that defendants John and/or Jane Doe jail staff did not mail the letters and "placed a 'substantial burden' on [his] religious practice as a Ritual Magician, or Ceremonial Magician, of the Golden Dawn, by denying [him] the ability to practice his religious beliefs and practices by not sending out his letter and request for a printout of religious publications by Chic and S. Tabatha Cicero,

3

Aleister Crowley and books by the founder of the Golden Dawn in order to practice such beliefs[.]" Id. at 5. The plaintiff claims that this violated his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLIUPA). Id.

The plaintiff alleges that on November 25, 2025, he wrote to defendant Broderick asking to purchase books/publications from Barnes & Noble or Amazon because he was "not interested in ANY of the books/publications offered on the tablets[.]" Id. at 5-6. The plaintiff states that he was told that this was not allowed per jail policy. Id. at 6. On December 1, 2025, the plaintiff allegedly said that he was not interested in the books provided on the tablets and that he wanted to buy books through a distributor. Id. He says that he received a response stating, "Books from Barnes & Noble will be denied as they are offered for purchase on the tablet. You not liking the options does not allow you to have your own books sent in." Id. The plaintiff alleges that on December 2, 2025, he wrote to Borgen about Broderick's response, but Borgen allegedly refused to answer the plaintiff's letter. Id. at 6-7. The plaintiff claims that the denial of his request to purchase non-religious books from Barnes & Noble violates his rights under the First Amendment. Id.

The plaintiff states that based on the jail's policy, he was prohibited from sending letters to Barnes & Noble in February and March 2025 in order to purchase non-religious and religious books and publications, and that he was told that jail staff would deny his request to purchase non-religious books or publications, in violation of his rights under the First Amendment. Id. at 7-8.

4

The plaintiff seeks injunctive relief, declaratory relief, nominal damages and punitive damages. Id. at 9.

C.     Analysis

Incarcerated individuals have a right under the First Amendment to access reading material. Koger v. Dart, 950 F.3d 971, 973 (7th Cir. 2020). "Although the First Amendment protects an inmate's access to reading material, prisons may have 'valid penological reasons' for restricting certain books." Robbins v. Foster, 723 F. App'x 368, 369 (7th Cir. 2018) (quoting Munson v. Gaetz, 673 F.3d 630, 633 (7th Cir. 2012)). A prison regulation that restricts an incarcerated individual's access to certain books is valid only if it is reasonably related to legitimate penological interests. Lindell v. Frank, 377 F.3d 655, 657 (7th Cir. 2004) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)). Courts consider four factors in determining whether a prison regulation is constitutional: (1) whether the regulation is rationally related to a legitimate governmental objective; (2) whether there are alternative means of exercising the right that remain open to the incarcerated individual; (3) what impact an accommodation of the asserted right will have on correctional officers and other incarcerated persons; and (4) whether there are ready alternatives to the policy that show that it is an exaggerated response to prison concerns. Id.; see also Beard v. Banks, 548 U.S. 521, 529 (2006).

"There is no question that 'publishers only' rules that restrict prisoners from receiving hardcover books from any noncommercial sources are reasonably related to a prison's interest in preventing contraband from being

5

smuggled into the prison." <u>Lindell</u>, 377 F.3d at 658 (citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 555 (1979)). But the Fond du Lac County Jail's policy is much more stringent in that it restricts non-religious reading material mailed into the jail from *any* source. At the screening stage, the court cannot conclude that the jail's policy is reasonably related to a legitimate penological interest. <u>See Human Rights Defense Center v. Milwaukee County, Wis.</u>, Case No. 24-CV-981, 2025 WL 304207, *10 (E.D. Wis. Jan. 27, 2025) (granting plaintiff's motion for preliminary injunction and enjoining defendants from preventing incarcerated persons at the Milwaukee County Jail from receiving publications directly from the publisher or other recognized commercial sources in their packages).

Because the plaintiff no longer is confined at the Fond du Lac County Jail, his claims for injunctive and declaratory relief are moot. <u>See Lukaszczyk v. Cook County</u>, 47 F.4th 587, 596 (7th Cir. 2022); <u>Maddox v. Love</u>, 655 F.3d 709, 716 (7th Cir. 2011) (claim for injunctive relief moot because plaintiff transferred to a different facility and no realistic possibility that he would return). The plaintiff may not sue the defendants for creating the policy because that would amount to facial challenge to the policy. <u>See Lukaszczyk v. Cook County</u>, 137 F.4th 671, 673 (7th Cir. 2025) ("A facial challenge usually invites prospective relief, such as an injunction, while an as-applied challenge invites narrower, retrospective relief, such as damages.") (citing <u>Citizens United v. Fed. Election Comm'n</u>, 558 U.S. 310, 331 (2010)). The court will dismiss

defendant Waldschmidt because his involvement in the allegations in the amended complaint is limited to creating the policy.

The plaintiff alleges that jail staff did not send two letters he wrote to Barnes & Noble requesting information about ordering books, and that Broderick and Borgen subsequently denied his request to order books from Barnes & Noble. The court will allow the plaintiff to proceed on a First Amendment claim against Broderick, Borgen and Doe jail officials for not letting him order books based on the jail policy.

The plaintiff also alleges that the Doe defendants' failure to mail his letters to Barnes & Noble placed a substantial burden on the practice of his religion because he couldn't order religious books from Barnes & Noble. Under the First Amendment, incarcerated individuals have a right to exercise their religion. Vinning-El v. Evans, 657 F.3d 591, 592-93 (7th Cir. 2011). To state a free-exercise claim under the First Amendment, the plaintiff must allege "that the defendants personally and unjustifiably placed a substantial burden on his religious practices." Thompson v. Holm, 809 F.3d 376, 379 (7th Cir. 2016). "Prison restrictions that infringe on an inmate's exercise of his religion are permissible if they are reasonably related to a legitimate penological objective." Tarpley v. Allen County, Ind., 312 F.3d 895, 898 (7th Cir. 2002) (citing Turner v. Safley, 482 U.S. 78, 89-91 (1987)).

The plaintiff's allegation that the Doe defendants' failure to mail his letters to Barnes & Noble placed a substantial burden on his ability to practice his religion is conclusory. The jail's policy allegedly creates an exception for

7

religious books and allows incarcerated individuals to order them from outside sources. The plaintiff does not allege that he was otherwise denied the ability to obtain religious books, nor does he allege that he was prevented from practicing his religion in other ways. The plaintiff has not stated a claim for violation of his rights under the First Amendment. And he cannot proceed under RLUIPA because the Act does not include suits for damages. See <u>Maddox v. Love</u>, 655 F.3d 709, 716-17 (7th Cir. 2011) (claim under RLUIPA becomes moot when realistic possibility of future violations no longer remains).

## II.     Conclusion

The court **DISMISSES** defendant Ryan Waldschmidt.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the amended complaint and this order on defendants James Borgen and Tyler Broderick under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendants James Borgen and Tyler Broderick to file a responsive pleading to the amended complaint.

8

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

9

advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 7th day of July, 2026.

BY THE COURT:

_____
HON. PAMELA PEPPER
Chief United States District Judge